## DEFORD, HINKLE & CO. *v.* MEHAFFY and others.

*(Circuit Court, W. D. Tennessee.* September 9, 1882.)

1. **REMOVAL OF CAUSES—TIME FOR FILING PETITION—PRO CONFESSO.**

    According to the Tennessee chancery practice a cause is not for trial until a *pro confesso* has been taken against a party not appearing, and a petition for removal is in time if filed before this has been done.

2. **SAME — SEVERAL DEFENDANTS — CAUSE, WHEN TRIABLE — REMOVAL, WHEN BARRED.**

    If there be several defendants, and as to one there is an issue by answer, but as to others no issue by answer or *pro confesso,* the cause is removable until and during the term at which the *pro confesso* is entered. It must be at issue and triable as to all the parties to bar the right of removal as to any of them by the lapse of a trial term ; and this, whether the parties as to whom there is no issue be necessary or only proper parties.

3. **SAME—PRO CONFESSO ON FINAL DECREE.**

    And the foregoing rule is not affected by the fact that the *pro confesso* may, under the practice, be entered in the final decree itself. Nothing but an actual trial commenced will bar the right of removal at the trial term when the case is in that condition.

4. **SAME—DEFECTIVE BOND—AMENDMENT—JURISDICTION.**

    If the removal bond be defective, and omit the condition for the payment of costs required by the act of congress, the omission is not fatal to the jurisdiction of the federal court. The defect may be cured by amendment, either in the state or federal court, or by the substitution of a new bond, containing the proper conditions, filed *nunc pro tunc.*

5. **SAME—ACT MARCH 3, 1875, CONSTRUED.**

    (1) The only essential *jurisdictional* facts are the existence of a controversy between citizens of different states, or arising under the constitution and laws of the United States, of the character and amount described in the statute. (2) The right of removal may be barred by the lapse of time, on failure to commence the proceeding within the time prescribed by the statute, as in other cases of limitation of that nature. (3) But a perfect petition and a perfect bond for removal, or a strict compliance with the practice regulations of the statute, are not absolutely essential as *jurisdictional* requirements, but only directory and not imperative methods of procedure ; regulations that should be carefully followed and reasonably enforced by the courts ; but, after all, regulations that are protected by the acts of congress authorizing amendments to cure defects and omissions in legal proceedings. (4) These amendments may be made in either the state or federal courts, according to their practice, respectively.

In Equity.  Motion to remand.

This is an attachment and injunction bill filed in the chancery court of Hardin county by citizens of Tennessee against a citizen of Louisiana, and certain citizens of Tennessee. It seeks an account of transactions between the plaintiffs and the leading defendant of

the sales of quantities of staves, and advances made by the defendant as a commission merchant, and avers that in such accounting the defendant is indebted to the plaintiff in a large amount. It alleges that the other defendants are indebted to the leading defendant in various sums of money, and prays for an attachment of this indebtedness on account of the non-residence, and for an injunction against paying to her until the claim of the plaintiff is satisfied. The chancellor's fiat was obtained, and the attachment and injunction were duly issued and levied. The bill was filed March 8, 1880, and publication made according to the state practice, process being served on the resident defendants, who were required by the process and allegations of the bill to answer as to their indebtedness to the other defendant. The process was all returnable to the April term 1880. There are two terms a year of that court,—in April and October. On June 23, 1880, Mrs. Mehaffy answered, and at the subsequent October term, on her application, the cause was continued. Proof was taken, and other orders not necessary to notice were made, and the cause continued by consent at the April term, 1881. Further proof was taken and filed, and orders were made in preparation of the case for trial until the October term, 1882, when Mrs. Mehaffy filed in the state court her petition and bond to remove the cause to this court. The condition of the bond is as follows: "Now, if the said Moline Mehaffy shall enter and file in the circuit court of the United States, to be held, etc., copies of all process, pleadings, depositions, testimony, and all other proceedings in this cause affecting or concerning said suit, then this obligation to be void." The transcript being filed, the plaintiffs move to remand the cause for want of jurisdiction, and the petitioner asks leave to amend the bond, or to substitute a proper bond.

*Pitts & Cunningham* and *Bullock & Hays*, for plaintiffs.

*A. G. McDougall, A. W. Campbell,* and *McCorry & Bond,* for defendant.

HAMMOND, D. J. The learned counsel for the motion here very frankly abandon all the grounds stated by them, except that (1) the application to remove was not in time; and (2) the bond is not conditioned, as the statute requires, "for paying all costs that may be awarded by the said circuit court, if said court shall hold that such suit was wrongfully or improperly removed thereto."

The first ground insisted on depends on the proper determination of the question, which was the term of the Hardin chancery court at which this cause could be "first tried?" No order *pro confesso* has

ever been entered in the case against the defendants not answering; and the counsel for the removing defendant insist that there has never been any term at which the cause stood for trial under our state practice, while the plaintiffs' counsel contend that the question must be determined with sole reference to the removing defendant, as to whom the cause was at issue by the answer, under our practice, at the October term, 1880, when the answer was filed; that the other defendants are only garnishees, and their answers or issues made by *pro confesso* are immaterial now that the leading defendant, whose appearance was to be secured by the attachment, has appeared and answered, and that as to all the defendants the cause stood for trial at the term at which the answer of Mrs. Mehaffy was filed, and at each term thereafter. The object of the attachment was not only to compel the appearance of the non-resident defendant, but likewise to secure the debt of the plaintiffs, and that this is so is apparent from the fact that since her appearance the attachment has not been discharged, nor the injunction dissolved, and could not be against the will of the plaintiffs until their debt is satisfied. These other defendants are in one sense *garnishees*, no doubt, but not in the technical sense of the argument, in which sense they are not parties to the suit, but merely persons summoned to answer in execution or attachment as to the effects or assets of the plaintiffs' debtor, of which they have knowledge, as in the case of *Cook* v. *Whitney*, 3 Woods, 715. Here they are parties to a bill in equity, under injunction and with all the plenary rights of the other defendants to a bill in chancery, not necessary but proper parties, and I have no doubt that they must be so treated in the consideration of the question to be so determined. Nominal parties in the record cannot defeat the right of removal. *Texas* v. *Lewis*, 12 FED. REP. 1, and note. But these are more than nominal parties, and if they were only such the principle could not apply in determining the question as to the time within which removal could be had under this statute.

It is also clear to my judgment that the act of congress does not limit the consideration of this question to the condition of the record as against the petitioner to remove. The whole case must be for trial as to all the parties, and not a part of it, to bar the right of removal by a lapse of the term. The act says so. Its language is, "he or they may make and file a petition in such suit in such state court before or at the term at which *said cause* could be first tried, *and before the trial thereof*," etc. Act March 3, 1875, § 3, (18 St. 471;) Bump, Fed. Proc. § 640, p. 224, and notes. Causes are not prop-

erly, or should not be, tried piecemeal, and nothing less than une-
quivocal language should qualify the natural meaning of these words,
and thus treat the cause as if the rule were to try it in parcels, and
not as a whole. The right to remove is not gone until the trial of
the cause, or the end of the term at which it could be first tried as to
all' the defendants, unless, indeed, the state law, which is not the
case with us, permits it to be finally heard in parcels. Was the
case, then, ready for trial as to all the parties at the time this peti-
tion was filed? It certainly was not. A *pro confesso*, is not, like
a judgment by default at law, where that judgment is the result of
a trial, and the end of the case, unless it be opened, as in *McCal-
lon* v. *Waterman*, 1 Flippin, 654, and *Harter* v. *Kernochan*, 103 U.
S. 562. In the case of *Graves* v. *Boon*, MSS. (Jackson, 1875, not
reported,) I have the opinion of the late commission of appeals, in
which the precise question was decided. These cases are not reported,
but they are judgments adopted by the supreme court, and while,
strictly speaking, not binding as authority, they are entitled, from
the character of the judges and their careful adjudications, to all
respect from this court, at least. The case stood on *pro confesso* as
to some of the defendants, but as to Nancy Boon there was neither
answer nor *pro confesso*. *McKissick*, J., says:

"The court being of opinion that as no answer was filed by defendant,
Nancy Boon, and no order *pro confesso* entered as to her, the case was not at
issue, and was therefore improperly heard by the chancellor; and for this error
the decree of the chancellor should be set aside. * * * But as she is the
trustee of these complainants, she is a necessary party to the cause, which
cannot be finally heard as to the other defendants without being heard as to
her; and not having been so heard, it must be remanded, to the end that it may
be regularly brought to a hearing."

The court cites *Mitchell* v. *McKinny*, 6 Heisk. 83, and distinguishes
it. The case was, no doubt, according to our practice, properly decided,
and would seem conclusive; but it is argued that there the defendant,
as to whom there was no *pro confesso*, was a necessary party, while
here they are not. Possibly, if the plaintiffs chose to abandon their
security afforded by the attachment and injunction, and dismiss as
to these parties, that argument might avail, provided the dismissal
were made promptly, and before the defendant filed the petition for
removal. But even then I should think that it ought to be done
under circumstances that would not prejudice the right of removal.
The plaintiff could not let the case stand as to all parties until the
term for removal had ended, and then, by dismissing as to some

parties, change the *status* of the cause and defeat the removal by an act of his own, which he might take for that purpose, having misled the adversary party by permitting the case to remain in a removable state until the dismissal was made. It is not necessary to decide this here, and I only allude to it, as I have had occasion to do before, to show that this right of removal is not within the power of the adversary party to defeat by any action of his which results in surprising the party desiring a removal, by a curtailment of the time which, but for that action, he would have under the statute, any more than it is within the power of the removing party to enlarge the time, after the bar of the statute has attached, by some act of his deferring the trial term. *Cramer* v. *Mack*, 12 FED. REP. 803. It is sufficient for this judgment that these parties were still on the record (and are yet) when the petition for removal was filed, at a time when the cause was not ready for trial. The plaintiffs thought proper to make them parties to secure the debt, as well as to compel the appearance of the main defendant, and we must take the case as they have made it. The defendant had a right to rely on the record as it stood in this matter of removal, and it is immaterial that the plaintiffs might have made a different case. If they had done so, either by leaving these outside parties out of the case or by dismissing them when the main defendant appeared, she might have filed the petition to remove more promptly; but without that, she was under no compulsion of this statute to act sooner than she did. There is nothing in the case of *Babbitt* v. *Clark*, 103 U. S. 606, to militate against the views above presented, but on the contrary they are supported by it. This class of questions largely depends on the state practice, and it seems plain to me that this case was never triable before the removal was asked, in any other sense than that it might have been so if the plaintiffs had promptly taken their *pro confesso*, or promptly dismissed the parties as to whom they might have done without. But this is not what is meant by the statute.

It is also argued that, under our practice, the *pro confesso* might be taken at the hearing, and in the final decree itself, and therefore this cause should not be held to be not ready for hearing for want of it. *Claybrook* v. *Wade*, 7 Cold. 555; *Clark* v. *Hays*, MSS. (Jackson Op. book 9, p. 455, not reported;) Tenn. Code, (T. & S.) §§ 4350, 4369, 4370, 4371, 4472, 4473. This is plausible, but I think not sound. If it be conceded, as I think it must, that a plaintiff may let the cause stand until called for trial, and then take the *pro confesso* against the defendants not appearing, it is still true that the *pro con-*

*fesso* precedes in point of time the actual trial or decree. *Bank of U. S.* v. *White,* 8 Pet. 262. It cannot be otherwise, for the decree is based on the *pro confesso,* which is the evidence on which the court acts in giving judgment. The mere fact that these distinct acts or orders of the court are embodied in the same draft is only a difference of degree, and an incident of the trial itself,—a mere factitious circumstance. If the *pro confesso* is taken, as it may be, at a rule day and immediately in default of answer, that act of preparation for trial, by making up the issues, may precede the trial many days or months, or even years; but it is none the less taken as an act of preparation for trial if done only a few minutes before or simultaneously with the trial. The entry on the minutes, or in the draft of the decree, is only evidence of what the court has already done in contemplation of law, and not the doing of it. The technical fact is that without a *pro confesso* against a defendant the pleadings do not show an issue, and the case is not *on the pleadings* triable, and this is the governing consideration. *Barney* v. *Latham,* 103 U. S. 205. Actual trial would, in such a state of the case, under the act of congress, bar removal, but nothing less, because before that event, and at the first term at which it is triable on the pleadings, the party may remove. *Removal Causes,* 100 U. S. 457; *Jifkins* v. *Sweetzer,* 102 U. S. 177, 179. Until *pro confesso* the case would not be triable, and that would be the term of trial in a case in that condition. This may seem an overnice distinction, but it is not, and is plain when we understand that the triable *status* of the case does not depend on the capability of being put in a condition for trial by the acts of the parties to bring it on, but in actually having been put in a condition *on the record* for trial. The party may remove it at the first term when in that condition, and has the whole term, unless the case be actually tried before he files the petition. He looks only to the condition of the record, and not to the state of mind of the adversary party, to determine whether the cause is triable at the time he files the petition. If he finds the issues not made up, the case is removable and he need look no further. *Blackwell* v. *Braun,* 1 FED. REP. 351; *Fulton* v. *Golden,* 20 Alb. Law J. 229; *Whitehouse* v. *Ins. Co.* 2 FED. REP. 498; *Murray* v. *Holden,* Id. 740; *Wheeler* v. *Ins. Co.* 8 FED. REP. 196; *Kerting* v. *American Oleographic Co.* 10 FED. REP. 17; *Aldrich* v. *Crouch,* Id. 305, and the note which collects the cases on this point.

The remaining question is as to the form of the bond. It contains no condition for the payment of costs, as required by the statute, and

this is said to be a fatal defect that cannot be amended, because it goes to the jurisdiction of the court. I do not find that the supreme court has ever decided this question, though I am inclined to think its decisions and intimations point quite plainly in the direction of sustaining the jurisdiction of this court as a necessary consequence of what has been decided. In the *Removal Cases,* 100 U. S. 457, there were questions about the form of the bond and the petition. The petition was not signed; and it was held the objection should have been made in the state court, so as to have afforded an opportunity there for amendment, and that it was too late to make it in the federal court. Why should not this be so as to the *bond* as well as the petition? One is of no more importance than the other. Again, the bond in that case was objected to because one of the sureties was incompetent to become so, and it was held immaterial, as there was another good surety, and it became, therefore, unnecessary to apply the same principle that was applied to the defective petition, namely, that no opportunity having been afforded to cure the defect, it came too late. But it seems to me a fair inference, from the whole decision, that these matters of practice in removal cases are subject to the general rules governing procedure in taking advantage of defects like this and their amendment. In *Parker* v. *Overman,* 18 How. 137, the petition for removal did not show the very essential fact—indeed, the most essential *jurisdictional* fact—of a difference in citizenship between the parties, and yet they were allowed to amend the record in the federal court so as to show that fact and sustain the jurisdiction by removal. And in *Robertson* v. *Cease,* 97 U. S. 646, the cause was actually remanded to give the parties an opportunity to amend the declaration, and show that fact by amendment, although it was contended this would make a new suit and be affected by the statute of limitations. It is true, this was a case brought, in the first instance, in the federal court, but, obviously, there is no reasonable distinction between the cases, nor any reason for holding a more rigid rule as to jurisdiction in removal causes than others. The rule that the record must show the jurisdictional facts is very strict; but if they can be made to appear, by amendment, in cases brought by original process, I see no reason why they may not be made to appear by amendment in *removal* causes; and a comparison of these two cases from the supreme court shows that court never thought there was a distinction. And if the petition or other parts of the record may be amended in so important a jurisdictional matter, I see

no reason why a defective bond may not be, even if we concede that a good bond is one of the essential *jurisdictional* requirements.

In *People's Bank* v. *Calhoun*, 102 U. S. 256, there was neither petition nor bond, but a *stipulation* to remove the cause. It was held, of course, that a mere agreement or consent could not confer jurisdiction. The question was reserved whether or not a stipulation agreeing to the existence of the jurisdictional facts, so as to put them on the record, would not have been sufficient, but the inference from the language used is that it would. I see no objection to such a ruling. It was held in *French* v. *Hoy*, 22 Wall. 238, and *Hervey* v. *Railroad Co.* 3 FED. REP. 707, that irregularities in proceedings for removal might be waived by neglecting to take advantage of them, and it would seem that they could be also waived by agreement. If the stipulation should state that the parties were citizens of different states, naming them, that the time had not elapsed for removal, and that *they waived the bond for costs*, etc., it would seem to me sufficient, and if so, the bond cannot be so indispensable as is insisted on here. More than this, the supreme court at last sustained the jurisdiction by removal on the stipulation, because it appeared from the record that it was a case of which the court had jurisdiction by reason of the *subject-matter*. If the petition and bond are so essential and indispensable as *jurisdictional* requirements, I do not understand how this ruling could have been made. I do not overlook what the court says about the removed case having been one that should have been properly brought only in the federal court, and the stipulation to remove having only accomplished what could have been compelled by injunction. But while it is true, as in *Dietzsch* v. *Huidenkoper*, 103 U. S. 494, the federal court could have protected its own jurisdiction by enjoining the parties (in the limited class of cases where this may be done) from proceeding in the state court, this would not operate to oust the jurisdiction of the state court, and *remove* the case there pending to the federal court, but only to stop the state-court suit, and compel a resort by original process to the federal court. Parties can no more stipulate to give the federal court jurisdiction in original than in removal suits, and if the technical defect of this decision is that the case was *removed* to the federal court, then this was done without either petition or *bond*, and they cannot be in all cases indispensable conditions precedent to the jurisdiction. This may be, I admit, pressing that case beyond the confines of an authoritative precedent, for the jurisdiction of the federal court depended on the

jurisdiction of the foreclosure suit, and it is possible the court intends to decide nothing more than that by the stipulation the parties agreed to abandon the proceeding in the state court, and take their papers—not remove the case—to the federal court, to go on as if originally commenced there. In which view it is the same thing as if they had agreed to commence over again in that court, and it was not a case of removal at all. But if the "subject-matter" is that it is a case "arising under the constitution and laws of the United States," and therefore removable, it is conclusive here that the giving of a perfect bond is not an indispensable condition precedent to give this court jurisdiction.

In the *Gold-washing Co.* v. *Keyes*, 96 U. S. 199, significant language is used. It is there settled that the petition for removal is a *pleading,* which must "set forth the essential facts not otherwise appearing in the case, which the law has made conditions precedent to the change of jurisdiction;" and in another place, that if it does not, "*and the omission is not afterwards supplied,* the suit must be remanded." It does not say that either a perfect petition or a perfect bond is an essential fact to the jurisdiction, and clearly does not mean that, but only that those facts which show that it is a removable controversy under the constitution and act of congress, describing the character of controversy to be removed, shall be made to appear, and if omitted may be afterwards supplied. Now, if these essential facts may be supplied after the case gets to the federal court, I do not understand why defects in the bond may not, be it as essential as it may. But plainly it is far inferior in the importance of its functions to that of the pleading showing the character of the controversy. It is an agreement with sureties to do certain things, and a failure to do these things may be well supplied by having them done under the direction of the court or compensated in damages; and, so far as the costs are concerned, the party is liable for them in *assumpsit* without a bond. The bond seems to me merely a matter of practice or mode of procedure, which should be strictly pursued, because it is commanded, and is an important security; but to make a perfect bond a condition precedent to our acquiring jurisdiction, and denying the right to amend it or supply its defects, seems to me to be elevating a minor matter into a cause of importance out of proportion to its inherent function, and never contemplated by the act of congress.

In *West* v. *Smith*, 101 U. S. 263, it was said that amendments in these removal causes should be allowed with the same liberality as in

the state courts, and this bond could have been amended there under our state practice. Tenn. Code, (T. & S.) §§ 2863, 2864; 1 Meigs, Dig. (2d Ed.) p. 133, subsec. 4; *Alexander* v. *Lisby*, 2 Swan, 107; *Brooks* v. *Hartman*, 1 Heisk. 36; *Jennings* v. *Pray*, 8 Yerg. 87. The state practice allows new bonds to be given in attachment, replevin, *certiorari*, and other purely and strictly-construed statutory proceedings. Our own Revised Statutes are just as liberal in allowing amendments, and one act of congress is as imperative as another. Rev. St. §§ 948, 954. Under their influence, appeal and writ-of-error bonds, which are just as jurisdictional as these removal bonds, when omitted may be supplied. *Martin* v. *Hunter*, 1 Wheat. 304; *Anson* v. *Blue Ridge R. Co.* 23 How. 1; *O'Reilly* v. *Edrington*, 96 U. S. 724; *Seward* v. *Corneau*, 102 U. S. 161, and other cases cited in Bump, Fed. Proc. 698. Why, then, should this bond in a removal proceeding be banished from the benefits of these remedial statutes, made to rectify mistakes, supply omissions, and correct errors in legal proceedings, and be the only kind of proceeding excluded from their curative effects? There is no reason. It would be a return to the barbarisms of the ancient law, which it was the object of the statutes of jeofails to abrogate, to hold this bond not amendable. It is true, the petition and bond are given in the state court, but they are the initial proceedings to bring the case here. It is settled beyond controversy now that it belongs to this court to adjudge as to their sufficiency, (*Traders' Bank* v. *Tallmadge*, 9 FED. REP. 363,) and it is not doing violence to any correct view of the subject to treat them as a proceeding in this court allowed the benefit of amendment under the imperative command of the above-cited acts of congress; or, if the state law applies, then to treat them as amendable under that practice.

Mr. Justice Miller says, in the case of *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 142, that it is always a matter of delicacy to approach these removal causes, and the right of removal should be very clear. The supreme court of Alabama, in *Ex parte Grimball*, 61 Ala. 598, expresses the true spirit of mutual "candor and good temper" that should be displayed on such occasions. The federal court should "cheerfully decline jurisdiction" whenever it appears that the controversy is not one between citizens of different states of the character described in the act of congress, or where it does not appear to be such on the record. But if the right of removal has not been barred by the lapse of time prescribed as a limitation to it by the act of congress, and the record shows such a controversy, it is a refinement of

delicacy to hold that the merely directory provisions regulating the mode of procedure are so rigid in their character that they become *jurisdictional*, are beyond correction, and fatal to the jurisdiction if defective. This theory can only be sustained on the notion that there is something extraordinary in this proceeding—so much so that it is to be discouraged and not favored by the courts, as something that is harsh and out of the ordinary course of remedial rights. I do not so regard it. It is not, in any sense, a paramount or supervisory jurisdiction of the courts of one government over those of another, but one that is concurrent and equal in all respects, and stands precisely on the same footing as similar regulations for the transfer of a cause from one court to another of equal dignity within the same jurisdiction. The strict limitations of the federal jurisdiction apply only to the subject-matter or character of the controversy, and these should never be carried beyond their plain limits. But given a controversy within those limits, and I can see no ground for converting rules of practice prescribed by the statute for bringing the suit into the federal court into conditions precedent to the exercise of the jurisdiction, so inflexible that the proceeding is withdrawn from the ordinary course of judicial treatment, and denied all correction and amendment.

The cases in the circuit courts are conflicting, and I cite those I have found bearing on the question more or less directly. *Burdick* v. *Hale,* 7 Biss. 96; S. C. 8 Chi. Leg. News, 241; *Torrey* v. *Grant Works,* 14 Blatchf. 269; *McMurdy* v. *Ins. Co.* 9 Chi. Leg. News, 324; *Webber* v. *Bishop,* 13 FED. REP. 49; *Beede* v. *Cheeney,* 5 FED. REP. 388; *Stevens* v. *Richardson,* 9 FED. REP. 191, 195; *Farmers' Co.* v. *Chicago R. Co.* 12 Chi. Leg. News, 65; *Van Allen* v. *Atchison R. Co.* 3 FED. REP. 545; *Hervey* v. *Illinois R. Co.* Id. 707; *Cooke* v. *Seligman,* 7 FED. REP. 263; *Smith* v. *Horton,* Id. 270; *Norris* v. *Mineral Point,* Id. 272; *Clark* v. *Railroad Co.* 11 FED. REP. 355; *Kaeiser* v. *Railroad Co.* 6 FED. REP. 1; S. C. 2 McCrary, 187; *Kidder* v. *Featteau,* 2 FED. REP. 616; S. C. 1 McCrary, 323; *Barclay* v. *Levee Com'r,* 1 Woods, 254; *Houser* v. *Clayton,* 3 Woods, 273. See, also, Dill. Rem. Causes, (2d. Ed.) pp. 34, 90–97, §§ 29, 74–76; Bump, Fed. Proc. 201, 202, 230; *Mix* v. *Andes,* 74 N. Y. 53; *Chamberlain* v. *American Co.* 11 Hun, (N. Y.) 370; 18 Am. Law Reg. 310. These cases are not all on the subject of defects in the bond, but defects on the removal proceedings generally, and their effect. Upon a careful review of the whole subject, I adhere to the views expressed in *McKenna* v. *Wooldridge,* 8 FED. REP. 650, which was a motion to remand for failing to file the record in this court on the first day of the term, and

an application to amend the petition for removal. I felt in that case the embarrassment of finding able judges applying the most rigid rules to the practice for removal of causes, and practically excluding, or, at least, much obstructing, the usual indulgence in the way of amendment and curative methods of procedure. And here I find the same embarrassment on the particular point in judgment, and have therefore re-examined the cases and authorities. I am perhaps, not unnaturally, confirmed in my own judgment by this examination, and feel constrained to hold, with all deference to opposing views, for the reasons above described, (1) that the only essential *jurisdictional* facts are the existence of a controversy between citizens of different states, or one arising under the constitution and laws of the United States, of the character and amount described in the statute; (2) that the right of removal may be barred by the lapse of time on failure to commence the proceeding within the time prescribed by the statute, as in other cases of limitations of that nature; (3) that a perfect petition for removal, and a perfect bond for removal, or a strict compliance with the regulations of the statute, are not absolutely essential as jurisdictional requirements, but only matters of practice, directory in their nature, and not imperative; regulations that should be carefully followed and reasonably enforced by the courts, but, after all, regulations that are protected by the statutes, authorizing amendments that may be allowed by the courts to cure defects and omissions, as in other pleadings and proceedings, and that these defects and omissions are not fatal to our jurisdiction; (4) that these amendments may be made in either the state courts or in the federal courts, according to their practice, respectively.

The motion to remand will be denied, but the petitioner for removal will be required to amend the bond or substitute a new one, conditioned as required by the statute, and to file the same *nunc pro tunc*, and, on failure to do this, the plaintiffs have leave to renew the motion to remand.

Motion overruled.